### 63965. AMOCO OIL COMPANY v. G. SIMS & ASSOCIATES.

DEEN, Presiding Judge.
Amoco Oil Company filed a complaint against appellee contending it extended credit to Turner, a service station operator, that he refused to pay his account balance of $19,946.02 plus interest, that it filed three financing statements (one on January 2, 1976, and two on July 13, 1977) allegedly taking a security interest in all Turner's personal property, further, that Turner sold all the

equipment, supplies and merchandise of the service station to McLarty and, as consideration for the sales agreement, Turner and McLarty entered into an escrow agreement whereby McLarty agreed to deposit with Sims, as escrow agent, the proceeds of the sale. Amoco claims that it demanded payment from Sims of Turner's account balance and that the demand was wrongfully refused. Sims answered contending that the Georgia Department of Revenue had also asserted a claim to the funds because Turner had incurred certain tax liabilities (sales and use, withholding and personal income taxes). The Georgia Department of Revenue filed a motion to intervene claiming an interest in the escrow fund because it had recorded a series of tax fi. fas. on the general execution docket of Cobb County. (The fi. fas. were filed by the state between September 30, 1977, through September 26, 1980.) After the motion to intervene was granted, both Amoco and the Department of Revenue filed motions for summary judgment asking the trial court to determine the priorities of the claims to the escrowed funds. The trial court ruled in favor of the Department of Revenue holding that the language of the escrow agreement indicated that the intent of the parties was to provide first for payment of the outstanding taxes and that any remaining funds would be paid to secured creditors. Amoco appeals contending that its security interest attached prior to the filing of the tax fi. fas. *Held:*

Code Ann. § 91A-4519 which was in effect on the date the escrow agreement was signed provides: "If any dealer liable for any tax, interest, or penalty levied pursuant to this Chapter sells out his business or stock of goods or quits the business he shall make a final return and payment within 15 days after the date of selling or quitting the business. The dealer's successor or assigns, if any, shall withhold a sufficient amount of the purchase money to cover the amount of the taxes, interest and penalties due and unpaid until the former owner produces a receipt from the commissioner showing that the taxes, interest and penalties have been paid or a certificate stating that no taxes, interest, or penalties are due. If the purchaser of a business or stock of goods fails to withhold the purchase money as required by this section, he shall be personally liable for the payment of the taxes, interest, and penalties accruing and unpaid on account of the taxable sales made by any former owner or assignor." As Turner was not able to obtain a certificate showing that all the taxes had been paid, McLarty was required to place the purchase money in an escrow account or he would be held personally liable for Turner's unpaid taxes, interest and penalties.

The sole question for decision is therefore the priorities in the escrow fund. Former Code § 109A-9—204 (1), which was in effect at

the time Amoco filed its financing statements, provided: "A Security Interest cannot attach until there is agreement . . . that it attach and value is given and the debtor has rights in the collateral." Under former Code § 109A-9—203, ". . . a security interest is not enforceable against the debtor or third parties unless (a) the collateral is in the possession of the secured party; or (b) the debtor has signed a security agreement which contains a description of the collateral . . ." (Subsection (c) which was added by Ga. L. 1978, p. 1097, to provide: "the debtor has rights in the collateral.")

Former Code § 109A-9—310 (which is substantially the same as the present code section) provided that a perfected security interest in collateral takes priority over all the liens listed and described in sections 67-1701 and 113-1508 except for (a) year's support, (b) lien for property taxes and "(c) a lien for all other State taxes takes priority over such security interest, except where such security interest is perfected by filing a financing statement relative thereto prior to such time as the execution for such State taxes shall be entered on the execution docket in the place and in the manner provided by law . . ."

Former Code § 92-5707 provided that taxes shall be paid before other debts, liens or claims and § 92-5708 provided that tax liens whether ad valorem, specific or occupation are superior to all other liens except for the operation of a security deed. Code § 92-8444 ranks tax liens and gives the state first priority except as against "any bona fide mortgagee, holder or transferee of a deed to secure debt, pledgee, judgment creditor, or purchaser of or from persons liable for the tax imposed by Chapter 92-14, where the rights of such mortgagee, holder or transferee of a deed to secure debt, pledgee, judgment creditor or purchaser shall have attached prior to the time notice of such lien shall have been filed by the State Revenue Commissioner in the office of the superior court of the county in which the principal place of business or in the county where the property of such person liable for payment of the motor-fuel tax is located." The Department of Revenue argues that its lien takes priority over Amoco's claim because Amoco does not have a security deed. As noted in *Williams v. General Finance Corp.,* 98 Ga. App. 31 (104 SE2d 649) (1958), the 1953 amendments to these code sections set out the priorities of tax liens to security deeds. However, when Code § 109A-9—310 was adopted in 1962, it stated that it set out the priorities between a tax lien and a perfected security interest.

We have examined the record and find that Amoco has not met its burden of proving that it had a perfected security interest. There is nothing in the record to show that it had an enforceable security interest; the record merely shows that Amoco filed three financing

statements. Under former Code § 109A-9—203 and the present code section, a security interest is not enforceable against the debtor or third parties unless "the debtor has signed a security agreement which contains a description of the collateral . . ." A financing statement by itself cannot constitute a security agreement.

"The general rule is that '[a] financing statement does not create or impose any personal obligation. A financing statement merely gives notice of the existence of a security interest but in itself does not create a security interest, for which a security agreement is required.

" 'The financing statement which is filed to give notice is a paper separate and apart from the security agreement itself.

" 'A financing statement cannot serve as a security agreement because it does not grant the creditor a security interest in the collateral and does not identify the obligation owed to the creditor.' 1 Anderson, Uniform Commercial Code 469, § 9-402.4 (2d Ed. 1971). Accord, *First Nat. Bank &c. Co. v. McElmurray,* 120 Ga. App. 134, 140 (169 SE2d 720) (1969). See also 68 AmJur 868, Secured Transactions, § 42." *Trust Co. of Columbus v. Associated Grocers Co-op.,* 152 Ga. App. 701, 703 (263 SE2d 676) (1979).

In applying the rules for summary judgment where both parties have made the motion (see *Ryder v. Schreeder,* 224 Ga. 382 (162 SE2d 375) (1968)) and construing the evidence against each movant, we find that Amoco has not met its burden of proving that it had a perfected security interest and that the Department of Revenue must prevail because it proved that it had recorded its tax fi. fas. on the general execution docket in Cobb County.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED MAY 10, 1982.

*Ronald L. Reid, Peter M. Degnan,* for appellant.
*John Tye Ferguson, Michael J. Bowers, Attorney General, Robert S. Stubbs, Executive Assistant Attorney General, H. Perry Michael, Senior Assistant Attorney General, David A. Runnion, Assistant Attorney General,* for appellee.