A96A1854. COLLINS v. LESTERS, INC. et al.
(484 SE2d 62)

RUFFIN, Judge.

Lesters, Inc. and its president, Chris Lester (collectively "the Lesters") filed an affidavit of illegality challenging a tax assessment and execution issued by the Georgia Department of Revenue ("the Department") against Lesters, Inc. d/b/a Kwik Serv. The parties subsequently filed cross motions for summary judgment. After a hearing, the trial court granted summary judgment to the Lesters and denied the Department's motion. We granted the Department's application for discretionary appeal, and for reasons which follow, we reverse the trial court's decision granting summary judgment to the Lesters and denying the Department's motion for summary judgment.

The record reveals that on February 20, 1994, Lesters, Inc. purchased the inventory and certain other personal property assets of a convenience store from Leonard Brannon for $47,063.26.[1] The purchase agreement further specified that $19,113.17 of the total purchase price would first be paid to J. L. Lester & Sons, a wholesale grocer that provided merchandise to Brannon and held a security interest in the inventory and assets purchased by Lesters, Inc.

After that payment, the total amount owed under the purchase agreement equalled $27,950.09. This money, however, was not paid

---

[1] Although the record presents some evidence that the formation of Lesters, Inc. may not have been completed on the date of the sale, the parties do not dispute that Lesters, Inc. was the purchaser. In fact, Lesters, Inc. judicially admitted through its affidavit of illegality that it purchased the assets. See *O'Brien Family Trust v. Glen Falls Ins. Co.*, 218 Ga. App. 379, 381 (2) (461 SE2d 311) (1995). Accordingly, we will treat Lesters, Inc. as the purchaser.

to Brannon. Instead, Lesters, Inc. distributed the remainder of the purchase money as follows: $40 in cancellation of paid tax fi. fas.; $7,452.41 to pay off various city, state and county tax fi. fas. and 1993 taxes; and $20,457.68 to the Internal Revenue Service ("IRS") to discharge the sale property from federal tax liens. Although the total federal tax lien on the property was $348,235.37, the IRS determined that the value of its interest in the property equalled $20,437.68. Consequently, the IRS discharged its lien in exchange for payment of this amount.[2]

Following the sale, Lesters, Inc. began to operate the convenience store. Approximately one year later, on February 17, 1995, the Department issued an "Official Notice of Assessment and Demand for Payment" relating to sales, use and second motor fuel taxes that Brannon failed to pay prior to the sale. On March 22, 1995, the Department issued a fi. fa. collection notice relating to the unpaid taxes and demanded payment of $15,472.42. Chris Lester received this notice on or about March 31, 1995. Subsequently, on April 4, 1995, the Department levied against the entire balance of Lesters, Inc.'s bank account, which totaled $14,174.

Contesting the assessment, execution and levy, Lesters, Inc. and its president filed an affidavit of illegality pursuant to OCGA § 48-3-1. On summary judgment, the trial court addressed the priority of interests, found that Lesters, Inc. properly distributed the proceeds of the asset sale, and concluded that the Department's tax assessment and execution were "illegal and invalid." This appeal followed.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). In its sole enumeration of error, the Department argues that the trial court erred in granting summary judgment to the Lesters and in denying its summary judgment motion.

1. The Department argues that as the successor to Brannon's assets, Lesters, Inc. is liable for the unpaid taxes at issue. We agree.

Pursuant to the successor liability provision of OCGA § 48-8-46, "[i]f any dealer liable for any tax, interest, or penalty imposed by [Title 48, Article 1, Chapter 8 relating to sales and use taxes] sells out his business or stock of goods or equipment or quits the business, he shall make a final return and payment within 15 days after the date of selling or quitting the business. The dealer's successor or

---

[2] The record is silent as to the $20 difference between the discharge amount and the actual sum paid to the IRS.

assigns, if any, shall withhold a sufficient amount of the purchase money to cover the amount of the taxes, interest, and penalties due and unpaid until the former owner produces either a receipt from the commissioner showing that the taxes, interest, and penalties have been paid or a certificate from the commissioner stating that no sales and use taxes, interest, or penalties are due. *If the purchaser of a business or stock of goods or equipment fails to withhold the purchase money as required by this Code section, he shall be personally liable for the payment of any sales and use taxes, interest, and penalties accruing and unpaid by any former owner or assignor.* The personal liability of the purchaser in such a case shall not exceed the amount of the total purchase money[.] . . ."[3] (Emphasis supplied.)

Absent a certificate or receipt showing that such taxes have been paid, this provision requires purchasers such as Lesters, Inc. "to place the purchase money in an escrow account or . . . be held personally liable for [the seller's] unpaid taxes, interest and penalties." *Amoco Oil Co. v. G. Sims & Assoc.*, 162 Ga. App. 307, 308 (291 SE2d 128) (1982). In short, the successor liability statute imposes a duty upon potential purchasers to inquire about the seller's tax liability. *Richards v. Blackmon*, 233 Ga. 739, 741 (2) (213 SE2d 638) (1975).

In this case, the Lesters do not contend that Lesters, Inc. received an appropriate receipt or certificate from Brannon indicating no tax liability. Rather, they argue that OCGA § 48-8-46 did not require Lesters, Inc. to withhold any portion of the purchase money because other claims were superior to the state tax execution. Regardless of priorities or the Department's rank among claimants, however, a fund sufficient to cover the unpaid taxes should have been established. Once an adequate fund exists, the priorities among claimants to that fund can be determined. See *Amoco*, supra at 308 (indicating that priorities are determined after the money is withheld). Through this procedure, all claimants, including the Department, have an opportunity to protect their interests and argue priorities before the purchase money fund is exhausted.

2. The Lesters also argue that OCGA § 48-8-46 cannot apply to this type of transaction because no purchase money actually passed to the seller, leaving the purchaser with nothing to withhold. They cite *Knudsen Dairy Products Co. v. State Bd. of Equalization*, 90 Cal. Rptr. 533, 539 (9) (12 Cal.App.3d 47) (1970), for the proposition that "successor liability cannot be imposed when the duty to withhold . . . cannot possibly be performed by the successor." The *Knudsen* decision, however, does not support the Lesters' argument. Interpreting

---

[3] The Lesters do not dispute the Department's assertion that, pursuant to OCGA § 48-9-14, the second motor fuel tax liability at issue in this case is also subject to the successor provision of OCGA § 48-8-46.

a successor liability statute similar to OCGA § 48-8-46, the *Knudsen* court recognized that a purchaser can withhold appropriate funds even if no money passes to the seller. "[T]he term 'withhold' as used in the statute does not necessarily mean having physical assets in hand but simply means dealing with the purchase consideration in such a manner as to deny to the seller the benefit of the purchase consideration and to thereby make a portion of it available for the satisfaction of the tax liability." *Knudsen*, supra at 539. In this case, Lesters, Inc. could have denied Brannon the benefit of the purchase price by setting aside an adequate fund and delaying payment to Brannon's creditors until priority was determined. Id. at 540.

Nothing in the language of OCGA § 48-8-46 exempts Lesters, Inc. from its requirements. On the contrary, the statute clearly provides that the purchaser *shall withhold* purchase money sufficient to cover the unpaid taxes or face personal liability. OCGA § 48-8-46. We disagree with the Lesters' claim that Lesters, Inc. was "unable" to withhold appropriate funds. See *Bank of Commerce v. Woods*, 585 SW2d 577 (Tenn. 1979) (rejecting similar argument relating to Tennessee's successor liability statute); see also *Revenue Cabinet v. Triple R Food A Rama*, 890 SW2d 638, 640 (2) (Ky. App. 1994) ("The public interest in collecting taxes demands that tax liability follows the assets of a business. Therefore, a clear and proper interpretation of the successor liability taxing scheme is to impose personal liability upon any purchaser who has purchased the assets of a business in disregard of the statutory obligation.").

3. The Lesters further argue that Lesters, Inc. did not receive proper notice of the tax assessment and execution. In their affidavit of illegality, the Lesters averred that the assessment and execution were illegal because the Department failed to provide proper notice. They also discussed when and how they received notice of the Department's claim in the factual portion of their summary judgment pleadings. Yet, they never argued before the trial court that lack of notice rendered the assessment and execution illegal, despite numerous opportunities on summary judgment. They neither raised the notice argument as a basis for summary judgment nor asserted it in defending against the Department's motion. "As grounds which may be considered on appeal are limited to those which were urged before the trial court, we will not review this issue." (Citations and punctuation omitted.) *Pollard v. Martin*, 191 Ga. App. 681, 682 (1) (382 SE2d 720) (1989).

4. Finally, despite the Lesters' claim, equity does not relieve Lesters, Inc. from the clear requirements of OCGA § 48-8-46. Without explanation, Lesters, Inc. ignored the responsibilities placed upon it as a purchaser. " 'It was [Lesters, Inc.'s] duty to discover whether such taxes were due at the time [it] purchased the business, and, if

[it] had complied with the statutory requirements which [it is] presumed to know, [it] would have been completely aware of the tax situation in regard to the business which [it was] purchasing. [Its] liability is due completely to [its] own lack of diligence.'" *Richards*, supra at 741.

Under the clear terms of OCGA § 48-8-46, Lesters, Inc. is liable for the subject taxes, interest, and penalties accruing and left unpaid by Brannon. Accordingly, the trial court erred in granting summary judgment to the Lesters and in denying summary judgment to the Department.

*Judgment reversed. McMurray, P. J., and Johnson, J., concur.*

DECIDED MARCH 12, 1997 — 

*Michael J. Bowers, Attorney General, Daniel M. Formby, Deputy Attorney General, Warren R. Calvert, Senior Assistant Attorney General, Sheri L. Smith, Assistant Attorney General*, for appellant.

*Daniel B. Simon III*, for appellees.