### A06A2340. GRAHAM v. PALMTOP PROPERTIES, INC.
(645 SE2d 343)

BERNES, Judge.

The Georgia Department of Revenue ("Department") assessed appellee Palmtop Properties, Inc. over $300,000 in sales and use taxes, penalties, and interest as an alleged successor of Sandy Springs Chevron, Inc. ("SSC"). Palmtop appealed the assessments to the Office of State Administrative Hearings, which conducted an evidentiary hearing and reversed the Department's assessments. The Department appealed to the state revenue commissioner ("Commissioner"), who reversed several of the factual findings made by the

administrative law judge ("ALJ") and issued a final decision upholding the assessments. Palmtop then appealed to the Superior Court of Fulton County, which reversed the Commissioner. Following our grant of its application for discretionary appeal, the Commissioner appeals from the superior court's order. We affirm for the reasons set forth below.

> In reviewing the Department of Revenue's administrative decision, the superior court determines whether there was any evidence to support the agency's decision. Upon our review of the superior court's actions, the evidence is construed in favor of the agency's decision. Both the superior court and this Court review conclusions of law de novo.

(Citations omitted.) *Ciba Vision Corp. v. Jackson,* 248 Ga. App. 688, 689 (548 SE2d 431) (2001).

So viewed, the record shows that SSC was incorporated in 1982 as a for-profit Georgia corporation. The corporate officers of SSC were Leon and Judith Hendrix. SSC operated an automobile repair and retail gasoline sales business in Atlanta.

Chevron U.S.A. initially owned the property on which the business was conducted and leased the premises to Mr. Hendrix. Although the lease was in Mr. Hendrix's name, SSC made the lease payments on the property.

From July 1997 through June 2000, SSC collected sales taxes from customers who purchased their gasoline or other products at the service station, but did not remit those taxes to the Department. Mr. and Mrs. Hendrix have never accounted for the whereabouts of the sales taxes collected from customers of the service station.

Ms. Marilyn Sue Johnson, a Department employee, was responsible for collecting delinquent taxes from taxpayers who used the zip code assigned to SSC. During the year 2000, Johnson became aware that SSC had not filed at least 30 months of sales tax returns due to the Department. In July 2000, agents from the Department contacted SSC about the delinquent tax returns.

On September 1, 2000, an attorney representing SSC delivered 30 delinquent sales tax returns to the Department and informed Johnson that Mr. Hendrix did not have the cash flow to pay the taxes immediately. On or about September 12, 2000, Johnson requested that a tax fi. fa. be issued in conjunction with the tax liability of SSC. She also requested a tax fi. fa. for Leon and Judith Hendrix in their capacities as the corporate officers of SSC. However, Johnson never requested a tax fi. fa. against Leon or Judith Hendrix in their individual capacities.

Although Johnson prepared certain paperwork for the Department to issue the above-mentioned state tax executions, the accounts stayed in a "hold" pattern from September 2000 until September 2004 due to an apparent computer problem. As a result, a tax fi. fa. was not issued against Leon or Judith Hendrix as corporate officers. However, on September 16, 2004, the Department issued a notice of Official Assessment and Demand for Payment to SSC, and, on January 26, 2005, the Department recorded a fi. fa. against SSC for sales taxes, interest, penalties, collection fees, and costs due to the Department in the amount of $321,514.17.

In the meantime, in October 2001, Mr. Hendrix purchased the service station from Chevron U.S.A. for the sum of $437,500 by making a down payment of 20 percent of the purchase price and financing the balance with a loan that he and his wife had secured from Citicorp Leasing, Inc. ("Citicorp"). Even though his wife was also liable on the mortgage, Mr. Hendrix had the property titled in his name only. Citicorp collected the mortgage payments on a monthly basis by directly debiting SSC's business bank account. The payments were SSC's "rental payments" to Mr. Hendrix.

On May 31, 2003, Mr. Mahendra Ganatra and Mr. and Mrs. Hendrix entered into a real estate purchase contract pursuant to which the Hendrixes agreed to sell the land, building, and fixtures at issue. The purchase price was $810,000, split evenly between the land and the building.

On June 5, 2003, in the First Addendum to Purchase and Sale Agreement of May 31, 2003, Ganatra agreed to honor Chevron U.S.A.'s right to repurchase certain equipment upon cessation of the sale of Chevron-branded gasoline on the premises. Also on June 5, 2003, Ganatra signed an "Inventory Purchase Contract" requiring him to pay the Hendrixes $15,000 for this equipment, with the first payment beginning 30 days after the closing.

On August 12, 2003, Ganatra and Nishi Sharma incorporated Palmtop to complete the purchase. At the closing that took place on August 29, 2003, Palmtop paid off the mortgage to Citicorp in the amount of $412,049.62 and tendered $366,029.79 to Mr. Hendrix. In addition, Palmtop paid Mr. Hendrix $280 for cigarettes and Coca-Cola inventory remaining on the premises. Mr. Hendrix also ultimately received $5,000 from Palmtop for the gasoline remaining in the underground storage tanks. Mr. and Mrs. Hendrix retained possession of the property for two weeks after the closing in order to close out SSC's operations. During this time, Mr. Hendrix moved SSC's equipment into storage. During the remainder of 2003, Palmtop operated a service station on the premises and filed sales tax returns with the Department.

In November 2004, the Department issued notices of Official Assessment and Demand for Payment to Palmtop Properties as the successor to SSC, pursuant to OCGA § 48-8-46. The instant litigation followed.

1. The Commissioner claims that the superior court erred in holding that Palmtop was not liable as a successor of SSC under OCGA § 48-8-46. We disagree.

Under the successor liability statute, OCGA § 48-8-46, if any "dealer" liable for unpaid sales taxes "sells out his business or stock of goods or equipment or quits the business, he [must] make a final return and payment within 15 days after the date of selling or quitting the business." The dealer's successor or assigns is required to withhold enough of the purchase money

> to cover the amount of the taxes, interest, and penalties due and unpaid until the former owner produces either a receipt from the commissioner showing that the taxes, interest, and penalties have been paid or a certificate from the commissioner stating that no sales and use taxes, interest, or penalties are due.

Id. The statute further provides that "[i]f the purchaser of a business or stock of goods or equipment fails to withhold the purchase money as required by this Code section, he shall be personally liable for the payment of any sales and use taxes, interest, and penalties accruing and unpaid by any former owner or assignor."[1] Id.

It is undisputed that Palmtop failed to withhold any of the purchase price or procure a receipt or certificate from the Commissioner with respect to sales and use taxes. The Commissioner contends that Palmtop therefore became personally liable for SSC's unpaid sales and use taxes, interest, and penalties by operation of OCGA § 48-8-46.

(a) Liability for a delinquent taxpayer's unpaid sales and use taxes may attach to a purchaser of a "business or stock of goods or equipment." OCGA § 48-8-46. In this case, according to the Commissioner, Palmtop is liable as a successor to SSC because it purchased all of the real estate "used in" SSC's business, some of SSC's inventory, and succeeded to the right to use Chevron U.S.A.'s service marks and to sell Chevron-branded gasoline at the location. Compare *Richards v. Blackmon*, 233 Ga. 739 (213 SE2d 638) (1975) (all the goods,

---

[1] A successor's personal liability, however, "shall not exceed the amount of the total purchase money." OCGA § 48-8-46.

stock, inventory, merchandise, equipment, and good will of the business purchased); *Graham v. JD Design Group*, 281 Ga. App. 347 (636 SE2d 66) (2006) (substantially all business assets purchased), cert. granted, 2006 LEXIS 985 (Ga. Nov. 20, 2006); *Collins v. Lesters, Inc.*, 225 Ga. App. 405 (484 SE2d 62) (1997) (convenience store inventory and personal property assets purchased); *Amoco Oil Co. v. G. Sims & Assoc.*, 162 Ga. App. 307 (291 SE2d 128) (1982) (all equipment, supplies, and merchandise of service station purchased).

OCGA § 48-8-46 did not cause Palmtop to become personally liable for SSC's unpaid taxes simply because it bought assets, such as the land and building, "used in" SSC's business. The statute provides that a purchaser's liability for failure to withhold the purchase price shall be that of "any former owner or assignor." Id. SSC has never owned or assigned the land, building, and equipment purchased by Palmtop, which had been previously transferred from Chevron U.S.A. to Mr. Hendrix. Similarly, Palmtop succeeded to any rights to sell Chevron-branded gasoline and to display the Chevron marks either from Chevron or from Mr. Hendrix, with whom Chevron had the contractual relationship, and not SSC. The cigarettes, soda, and gasoline remaining in the tanks may have previously been a part of SSC's inventory, but the Commissioner has not attempted to assign liability to Palmtop with respect to the purchase price of these minor items, and their inclusion in the transaction does not make Palmtop liable to pay over $300,000 in unpaid sales and use taxes.

(b) Notwithstanding the foregoing, the Commissioner determined in its agency decision that Palmtop was liable as a successor to SSC because Mr. Hendrix was SSC's alter ego, because Mr. Hendrix held all property transferred to Palmtop as SSC's nominee, and because SSC was the beneficial owner of a business purchased by Palmtop. Contrary to the Commissioner's position, we cannot conclude that the equitable principles of alter ego and nominee theory can be applied to impose successor liability on Palmtop in this case.

In order to show that a corporation is a person's alter ego to justify disregarding the corporate entity,

> it must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud.

(Citation omitted.) *Artrac Corp. v. Austin Kelley Advertising*, 197 Ga. App. 772, 775 (3) (399 SE2d 529) (1990). "In general, equitable

principles govern the alter ego doctrine. As a consequence, a claim for piercing the corporate veil is appropriately granted only in the absence of adequate remedies at law." (Citations and punctuation omitted.) *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 290 (1) (612 SE2d 296) (2005). A court should disregard the corporate form with great caution. *Farmers Warehouse of Pelham v. Collins*, 220 Ga. 141, 150 (2) (d) (137 SE2d 619) (1964).

The nominee theory, as relied on by the Commissioner, has been applied in the context of levies by the Internal Revenue Service to enforce federal tax liens.

> It is well settled that the IRS may properly levy against property of a delinquent taxpayer's nominee. As is apparent from a reading of the cases applying this doctrine, the nominee theory stems from equitable principles. Focusing on the relationship between the taxpayer and the property, the theory attempts to discern whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in the hands of another while, in actuality, retaining all or some of the benefits of being the true owner.

*Richards v. United States (In re Richards)*, 231 BR 571, 578 (E.D. Pa. 1999).

The Commissioner found numerous factors supporting its findings that Mr. Hendrix was SSC's alter ego, and that SSC was the beneficial owner of the property transferred to Palmtop. While we accept these findings, it does not follow that Palmtop should be subjected to liability for SSC's unpaid taxes. Significantly, while relying on numerous examples of the nominee theory by the federal courts and the alter ego theory by the Georgia courts, the Commissioner fails to show that these principles have been previously applied in a context similar to that of successor liability under OCGA § 48-8-46.[2] Even if Mr. Hendrix's property was subject to a tax lien on account of SSC's unpaid sales and use taxes, Palmtop paid value for

---

[2] See, e.g., *G. M. Leasing Corp. v. United States*, 429 U. S. 338, 350-351 (97 SC 619, 50 LE2d 530) (1977) (IRS could levy on taxpayer's property held in name of petitioner corporation); *United States v. Williams*, 581 FSupp. 756, 759 (3) (N.D. Ga. 1982) (property was found to belong to taxpayer, and thus subject to levy, although held in the name of his mother); *Sheppard v. Tribble Heating & Air Conditioning*, 163 Ga. App. 732, 733 (1) (294 SE2d 572) (1982) (evidence supported holding individual liable for debts of wholly owned corporation); *Jones v. Cranman's Sporting Goods*, 142 Ga. App. 838, 842 (237 SE2d 402) (1977) (corporation could be held liable for subsidiary's warranty); *Midtown Properties v. George F. Richardson, Inc.*, 139 Ga. App. 182, 183 (1) (228 SE2d 303) (1976) (in contract action, issue of fact remained as to whether defendant corporation was alter ego of another defendant).

the property and took without notice of a recorded lien or any apparent knowledge of improper dealings among Mr. Hendrix and SSC. "As between the State which has the right to record its liens for sales and use taxes and withholding taxes, thereby protecting itself against all purchasers, and a bona fide purchaser who has no means of protecting himself, fairness requires us to favor the bona fide purchaser." *In the Matter of Fulton Air Svc.*, 254 Ga. 649, 651 (333 SE2d 581) (1985).

The Commissioner contends that *Fulton Air Svc.* is irrelevant, inasmuch as Palmtop could protect itself, and was obligated to do so, by withholding the purchase money or procuring a receipt or certificate establishing that no sales taxes were unpaid in connection with the business then being operated on the property. See *JD Design Group*, 281 Ga. App. at 349 (even in absence of recorded tax lien, taxpayer could have prevented liability by withholding purchase money or procuring certificate showing that no taxes were owing). While we cannot condone Palmtop's failure to obtain a receipt or certificate from the Commissioner, we are not persuaded that by then failing to withhold the purchase money, Palmtop assumed the risk that the property it bought from Mr. Hendrix would be retroactively deemed to be owned by SSC by application of equitable principles of nominee theory and alter ego doctrine. The Department had an adequate remedy at law through recording its fi. fa., and would have been protected had it implemented its employee's direction to do so in 2000, rather than 2005. See *Acree v. McMahan*, 276 Ga. 880, 883 (585 SE2d 873) (2003) (declining to allow "outsider reverse piercing" claim because, among other things, traditional theories provided adequate remedies). Palmtop, on the other hand, was only on notice that its liability for unpaid sales and use taxes was that of any former owner or assignor,[3] which SSC did not appear to be. Further, any ambiguity as to whether OCGA § 48-8-46 should be construed in favor of applying alter ego or nominee principles must be resolved against the Commissioner. "[R]evenue laws are neither remedial statutes nor laws founded upon any permanent public policy, and are not, therefore, to be liberally construed; and hence, whenever there is a just doubt, that doubt should absolve the taxpayer from his burden." (Citation omitted.) *Interstate North Sporting Club v. Cobb County Bd. of Tax Assessors*, 250 Ga. App. 221, 224 (551 SE2d 91) (2001).

---

[3] Palmtop is obviously a successor to Mr. Hendrix should OCGA § 48-8-46 otherwise apply to the transaction. The Department's position, however, is that any tax liability of Mr. Hendrix is immaterial and that the Department is pursuing Palmtop as successor to SSC.

In view of the foregoing, we conclude that the superior court did not err in finding that Palmtop was not liable as SSC's successor under OCGA § 48-8-46.

2. The Commissioner also claims that the trial court erred in finding that the three-year statute of limitation in OCGA § 48-2-49 (b) applied to Palmtop's assessment as a successor for taxes that SSC had reported on its corporate returns. However, in view of our conclusions in Division 1, supra, the Commissioner's claim is moot.

*Judgment affirmed. Barnes, C. J., Johnson, P. J., Miller and Ellington, JJ., concur. Andrews, P. J., and Blackburn, P. J., dissent.*

ANDREWS, Presiding Judge, dissenting.

It is uncontroverted that Palmtop did not obtain either a receipt or a certificate from the Commissioner showing that sales and use taxes owed by its predecessor gas station owner had been paid. Nor has Palmtop pointed to anything in the record showing that it asked either Sandy Springs Chevron (SSC) or the Hendrixes whether they owed any tax. These failures and omissions provide some evidence to support the Commissioner's decision that Palmtop was indeed a successor to the tax liability of SSC and Hendrix under OCGA § 48-8-46. I therefore dissent.

OCGA § 48-8-46 provides that

> [i]f any dealer liable for any tax, interest, or penalty imposed by [Title 48, Chapter 8, Article 1 relating to sales and use taxes] sells out his business or stock of goods or equipment or quits the business, he shall make a final return and payment within 15 days after the date of selling or quitting the business. *The dealer's successor or assigns, if any, shall withhold a sufficient amount of the purchase money to cover the amount of the taxes*, interest, and penalties due and unpaid *until the former owner produces either a receipt from the commissioner showing that the taxes, interest, and penalties have been paid or a certificate from the commissioner stating that no sales and use taxes, interest, or penalties are due. If the purchaser of a business or stock of goods or equipment fails to withhold the purchase money as required by this Code section, he shall be personally liable for the payment of any sales and use taxes*, interest, and penalties accruing and unpaid by any former owner or assignor. The personal liability of the purchaser in such a case shall not exceed the amount of the total purchase money. . . .

(Emphasis supplied.)

The record here shows that after being towed to SSC following a car breakdown, Mahendra Ganatra concluded that a convenience store and gas station business would be profitable there. Ganatra eventually purchased the property from the legal owner, Hendrix, for a total of $810,000, and then, after taking stick measurements of the amount of gasoline left in the station's underground storage tanks, paid an additional $5,000 for that gasoline and $15,000 for the gasoline pumps and other equipment. Ganatra then incorporated Palmtop and applied for a sales tax registration number to operate a convenience store and gas station on the premises.

As the State points out, liability for a delinquent taxpayer's unpaid sales and use taxes may attach to a purchaser of a "business *or* stock of goods *or* equipment." (Emphasis supplied.) OCGA § 48-8-46. Although Palmtop makes much of the fact that it did not purchase SSC's business, it bought the real estate and equipment forming the principal basis of that business, and then proceeded to operate the same kind of business on the property and with that equipment. Under these circumstances, I cannot conclude that the Commissioner erred when he found as a matter of fact that "Palmtop Properties was in the service station business after it acquired the property." See *Ciba Vision Corp. v. Jackson*, 248 Ga. App. 688, 689 (548 SE2d 431) (2001) (courts review administrative decisions of Department of Revenue to determine whether there is "any evidence" to support the Department's decision).

The Commissioner also concluded that SSC was an alter ego for Hendrix. The majority accepts this conclusion (p. 735), but holds that because SSC was never a "former owner or assignor" of the property, the State's failure to record its lien should prevent us from piercing SSC's corporate veil for the purpose of reaching Palmtop. Such reasoning transforms a wished-for conclusion — that Palmtop should not be held accountable for Hendrix's taxes — into the premise leading to that conclusion.

OCGA § 48-8-46 mandates that only a purchaser who succeeds in obtaining a receipt or certificate from the commissioner can escape successor liability. *Richards v. Blackmon*, 233 Ga. 739, 741 (2) (213 SE2d 638) (1975). It is irrelevant that the State's system for attaching tax liens malfunctioned here, since the only material inquiry is whether Palmtop fulfilled its obligations under the statute. See *Miles v. Dept. of Revenue*, 797 FSupp. 987 (S.D. Ga. 1992) (summary judgment properly granted to Commissioner despite purchasers' claim that they were unaware of previous owner's tax delinquencies). Other states have imposed successor liability, moreover, even when that successor has not taken the property from the owner who created the delinquency. See, e.g., *Bates v. Director of Revenue*, 691 SW2d 273 (Mo. 1985) (current owner who failed to withhold purchase money or

to produce receipt and certificate from commissioner must pay taxes owed by prior owner who lost property in foreclosure).

The majority finally declines to hold Palmtop liable simply because the latter "took without [either] notice of a recorded lien or any apparent knowledge of improper dealings" between SSC and Hendrix (p. 736). The state of Palmtop's knowledge was its own responsibility, however. As we held in another case rejecting a plea for "equity" by a successor who had failed to do what OCGA § 48-8-46 requires:

> It was [Palmtop's] duty to discover whether such taxes were due at the time it purchased the business, and, if it had complied with the statutory requirements which it is presumed to know, it would have been completely aware of the tax situation in regard to the business which it was purchasing.

(Punctuation omitted.) *Collins v. Lesters, Inc.*, 225 Ga. App. 405, 408-409 (4) (484 SE2d 62) (1997), quoting *Richards*, supra at 741. Because only Palmtop can be held responsible for its lack of diligence and its failure to comply with OCGA § 48-8-46, I respectfully dissent.

I am authorized to state that Presiding Judge Blackburn joins in this dissent.

DECIDED MARCH 30, 2007.

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, Warren R. Calvert, Senior Assistant Attorney General, Lourdes Gonzalez de Mendoza, Frances C. Mulderig, Assistant Attorneys General*, for appellant.

*Troutman Sanders, William M. Droze, T. Jerry Jackson, David F. Golden*, for appellee.