**FIRST DIVISION
ELLINGTON, C. J.,
PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**July 16, 2012**

# In the Court of Appeals of Georgia

A12A0216. GEORGIA DEPARTMENT OF REVENUE v. MOORE.

PHIPPS, Presiding Judge.

The Georgia Department of Revenue filed this discretionary appeal from the superior court's judgment, which reversed the Department of Revenue's final administrative decision regarding the sales and use tax liability of Richard Moore, a corporate officer. For the reasons that follow, we affirm the judgment of the superior court.

"In reviewing the Department of Revenue's administrative decision, the superior court determines whether there was any evidence to support the agency's decision. Upon our review of the superior court's actions, the evidence is construed

in favor of the agency's decision."[1] "[O]ur duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency."[2] Our review as to conclusions of law is de novo.[3]

Viewed in the proper light, the record shows that Moore and Thomas Turrentine each owned a partial interest in KTK Restaurant, LLC d/b/a The River Room; Turrentine was the majority owner of KTK Restaurant. In August 2005, a state tax execution was recorded against "Thomas Turrentine [,] KTK Restaurant LLC d/b/a The River Room[,] Personal Liability" for unpaid taxes for the period beginning July 2000 and ending September 2003.

In November 2006, the Department of Revenue (hereafter the "Department") issued to "Richard T. Moore[,] KTK Restaurant LLC d/b/a The River Room[,] Personal Liability[,] Per OCGA 48-2-52" an Official Assessment and Demand for

---

[1] *Graham v. Palmtop Props*., 284 Ga. App. 730, 731 (645 SE2d 343) (2007) (citation omitted).

[2] *Grimes v. Catoosa County Sheriff's Office*, 307 Ga. App. 481 (1) (705 SE2d 670) (2010) (citation and punctuation omitted).

[3] *Grimes, supra; Graham*, supra; see OCGA § 50-13-19 (h).

2

Payment, seeking $187,221.50 for sales and use taxes which The River Room owed for the period beginning August 2001 and ending September 2003.

In February 2007, Turrentine paid the Department $267,174.67 "for the taxes of KTK Restaurant." As found by the ALJ (and supported by the testimony of the Department's witness), "Turrentine's payment satisfied the assessment against [Moore]. . . . In other words, the back taxes assessed against [Moore] had been paid in full."

In May 2007, Turrentine filed a claim with the Department to obtain a refund of the tax payment, stating that he was not a "responsible person" of KTK Restaurant (within the meaning of OCGA § 48-2-52). After his claim was denied, Turrentine filed a lawsuit against the Department, seeking a refund of the tax payment. Turrentine and the Department settled the refund lawsuit and entered a stipulation/agreement that: the Department would pay Turrentine $67,500; the agreement would be conclusive as to any claim or liability related to the $267, 174.67 Turrentine paid to the Department; and the agreement would fully resolve Turrentine's liability "for KTK Restaurant, LLC, d/b/a the River Room for the sales and use tax periods of August 2001, November 2002, December 2002, January 2003, February 2003, March 2003, May 2003, June 2003, July 2003, August 2003, and

3

September 2003." The Department paid Turrentine as agreed, but continued to demand that Moore pay the assessment for The River Room; rather than demanding the full amount sought in the official assessment ($187,221.50), the Department made an adjustment based on Turrentine's payment and demanded $72,225 from Moore.

Moore appealed the November 2006 assessment to the Office of State Administrative Hearings. The administrative law judge ("ALJ") ruled in favor of the Department, concluding that Moore was a "responsible person" pursuant to OCGA § 48-2-52 and that he was liable for The River Room's taxes.[4] The Commissioner of the Department adopted the ALJ's initial decision as the Department's final decision.

Moore appealed the Department's final decision to the superior court. In reversing the Department's ruling, the superior court found, inter alia, that: the payment the Department received from Turrentine had satisfied the sales and use tax obligation for The River Room for the tax period; the Department had voluntarily returned part of that payment; and the Department was not entitled to pursue Moore for the amount it had elected to return to Turrentine as a refund. The court also

---

[4] The ALJ indicated that the Department was seeking from Moore a payment of $72,225.

4

enjoined the Department from continuing to seek from Moore payment of the $72,225 assessment.

1. The Department contends that the superior court erred in holding that the Department was pursuing Moore for money it had refunded to Turrentine, when Moore and Turrentine were not liable for the "same taxes" and Moore's tax obligations were not satisfied by Turrentine's payment. This argument presents no basis for reversal.

OCGA § 48-2-52 provides, in pertinent part, that

> [a]ny officer or employee of any corporation, . . . or any partner or employee of any limited liability partnership who has control or supervision of collecting from purchasers or others amounts required under this title . . . and who willfully fails to collect the amounts or taxes or truthfully to account for and pay over the amounts or taxes to the commissioner, or who willfully attempts to evade or defeat any obligation imposed under this title, shall be personally liable for an amount equal to the amount evaded, not collected, not accounted for, or not paid over.

5

It is undisputed on appeal that Moore and Turrentine were responsible persons of KTK Restaurant LLC d/b/a The River Room within the meaning of OCGA § 48-2-52.[5]

The parties have cited, and we have found, no cases specifically addressing the issue of whether the Department is authorized to collect an assessment of corporate taxes from one responsible person (within the meaning of OCGA § 48-2-52) after it has collected the full amount due from another responsible person and then voluntarily refunded a portion of that payment to the latter person. However, this court has held that because OCGA § 48-2-52 is patterned after the federal statute regarding a corporate officer's failure to pay taxes (26 USC § 6672) we "may turn to the federal cases for aid in construing [the] statute."[6]

We find instructive several federal cases, in which courts have held that responsible persons of a corporation are jointly and severally liable for the penalty provided in the federal statute, but that the government is allowed to collect the

---

[5] See *Haysman v. Dept. of Revenue*, 432 B.R. 336, 339 (III) (ND Ga. 2010) ("A person is liable for a company's unpaid taxes if he is (1) a responsible person who (2) willfully fails to collect and remit . . . sales taxes. . . .A responsible person within the meaning of OCGA § 48-2-52 is one who controls the funds of the company and fails to remit the required taxes.").

[6] *Blackmon v. Mazo*, 125 Ga. App. 193, 196 (1) (a) (186 SE2d 889) (1971).

liability only once.[7] That the government is allowed to collect the liability only once is consistent with Georgia law concerning civil actions, generally, providing that "[a] plaintiff may pursue any number of consistent or inconsistent remedies against the same person or different persons until he shall obtain a satisfaction from some of them,"[8] and regarding contracts, providing that when a creditor releases one person who is bound jointly with or primarily to a debtor, a release of the other liable person results by operation of law.[9]

---

[7] See *Gens v. United States*, 615 F2d 1335, 1339-1340 (II) (Ct. Cl. 1980); *Mazo v. United States*, 591 F2d 1151, 1157 (IV) (5th Cir. 1979) (responsible persons are jointly and severally liable for the penalty provided in the federal statute; noting, in dicta, that it is "doubtful whether the government may obtain more than one satisfaction of [the tax] liability."); *Brown v. United States*, 591 F2d 1136, 1143 (IV) (5th Cir. 1979) ("[d]ouble recovery by the government is not necessary to fulfill § 6672's primary purpose of protection of government revenues.").

[8] OCGA § 9-2-4.

[9] See OCGA § 13-4-80; *Nannis Terpening & Assocs. v. Mark Smith Constr. Co.*, 171 Ga. App. 111, 113-114 (1) (318 SE2d 89) (1984) ("No matter what right the party wronged may have of electing between remedies or of pursuing different defendants for the same cause of action, when he once obtains full satisfaction from one source, his cause of action ends, and he can assert it no further. If the plaintiff in a suit brought upon a given cause of action accepts a sum of money in full settlement thereof, he can not thereafter set up the same cause of action against another whom he had the election of suing in the first instance."); *Middlebrooks v. Phillips*, 39 Ga. App. 263 (146 SE 653) (1929) (where the holder of note accepted a sum of money from one of several joint makers on the note "in full settlement of his liability personally," the holder could no longer enforce the obligation against the other

It bears emphasizing that "[r]evenue laws are neither remedial statutes nor laws founded upon any permanent public policy, and are not, therefore, to be liberally construed; and hence, whenever there is a just doubt, that doubt should absolve the taxpayer from his burden."[10]

In this case, the ALJ found as matters of fact that Turrentine's payment (of $267,174.67) to the Department satisfied the assessment (of $187,221.50) against Moore, and that "the back taxes assessed against [Moore] had been paid in full"; there was evidence to support those findings. The ALJ also found that Moore and Turrentine had agreed that Turrentine would pay the outstanding tax obligations for The River Room in exchange for Moore's agreement to relinquish his interest in The River Room and another business (which Moore did), so that Turrentine could sell The River Room; this finding is likewise supported by record evidence.

---

makers, as the release of one of the persons so jointly liable operated, prima facie, as a release of the others); see *Mathis v. Melaver, Inc.*, 206 Ga. App. 392, 393 (425 SE2d 401) (1992) (where a party is awarded by agreement the full amount of a judgment against co-defendants, and he compromises the award with one set of co-defendants, he cannot attempt to collect the difference between the compromise amount and the full amount of the judgment from the other co-defendants) (physical precedent only).

[10] *Graham*, supra at 736 (1) (punctuation and citation omitted).

Although the Department takes issue with certain findings of the superior court, on appeal we decide whether the record supports the decision of the administrative agency.[11] Construing the evidence in favor of the agency's decision, the Department collected payment for the full tax liability of The River Room once, but then entered into an agreement with and voluntarily refunded a portion of the payment to one of the corporation's responsible persons. We conclude that under these circumstances, the release of and refund payment to Turrentine operated as a release of Moore. The Department's reliance on *Gens v. United States*[12] as support for its position that it was authorized to continue its efforts to collect the payment from Moore is misplaced because *Gens* is factually distinguishable.[13]

---

[11] See *Grimes*, supra.

[12] Supra.

[13] In *Gens*, the court held that the government was not obligated to abate penalty assessments made against one taxpayer to the extent it had collected penalty assessments arising from the same tax liabilities from two of his business associates. Id. at 1339 (II). In that case, the government had collected "some" penalty assessments from both of the taxpayer's former associates. Id. The opinion does not indicate whether the assessments had been paid in full, as occurred in the instant case. Moreover, the *Gens* court held that the taxpayer was not entitled, at that time, to an abatement when the collection from one of the associates involved other years, the collection from the other associate was the subject of a pending lawsuit, and the government's right to retain the payment had not been established. Id. at 1339-1340 (II).

9

As pertinently provided in OCGA § 13-1-13,

> [p]ayments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property.

The Department's position that OCGA § 13-1-13 does not apply because a specific statute (namely, OCGA § 48-2-35) governs the claim is without merit; OCGA § 48-2-35, which sets forth a taxpayer's right regarding refunds of taxes erroneously or illegally assessed and collected and delineates the procedures for claiming such a refund, does not address the issues pertinent to this appeal.

By voluntarily paying Turrentine the settlement amount with full awareness of any potential joint claim it had against Moore, the Department forfeited any right it had to recoup from Moore the payment it made to Turrentine. The Department erred in concluding otherwise.

We note that under OCGA § 50-18-99 (h), superior courts are permitted to use their equitable powers to reject or reverse administrative decisions that violate constitutional or statutory provisions, are effected by error of law, or are arbitrary or

10

capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. The record did not support the Department's final decision, and the superior court correctly reversed the agency's decision.

2. The Department challenges the superior court's finding that "[i]f the Department intended to take this course of action, it should have added Mr. Moore as a necessary party" to Turrentine's lawsuit. In light of our holding in Division 1,[14] as well as our duty on appeal to review whether the record supports the final decision of the administrative agency,[15] we do not address this challenge.

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

[14] Supra (namely, that the Department's decision was not supported by the record and was properly reversed).

[15] See generally *Grimes*, supra.